ILLINOIS STATE EMPLOYEES' ASSOCIATION *et al.*, Plaintiffs-Appellees, *v.* JOHN MCCARTER, DIRECTOR OF THE DEPARTMENT OF FINANCE, Defendant-Appellant—(BOARD OF TRUSTEES OF THE STATE EMPLOYEES' RETIREMENT SYSTEM OF ILLINOIS *et al.*, Defendants.)

THE PEOPLE *ex rel.* COUNCIL 34, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al.*, Petitioners-Appellees, *v.* BOARD OF TRUSTEES OF THE STATE EMPLOYEES' RETIREMENT SYSTEM, Respondent.

(No. 11910;

Fourth District—February 14, 1973.

James W. Winning, of Springfield, for appellant.

J. Dale Berry, of Kleiman, Cornfield & Feldman, of Chicago, and Drach, Terrell & Deffenbaugh, of Springfield, both for appellees.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

This appeal is from two consolidated causes: the first filed being a complaint for injunction in case No. 526-71, against John McCarter, Director of the Department of Finance of the State of Illinois and the Board of Trustees of the State Employees' Retirement System of the State of

Illinois, and A. A. Weinberg individually and as its actuary, by the Illinois State Employees' Association, a voluntary not-for-profit corporation, and Dean W. Foltz and other individuals as participants in the State Employees' Retirement System of Illinois, individually and on behalf of all members of the Illinois State Employees' Association; the second filed being a *mandamus* proceeding in case No. 542-71 by Illinois State Employees' Union, People of the State of Illinois *ex rel.* Council 34 of American Federation of State, County and Municipal Employees, AFL-CIO, and several state employees praying that John W. McCarter as Acting Director of Finance of the State of Illinois be required to (1) immediately rescind a directive to state agencies to make contributions to the Illinois State Retirement System at 4.80% of payroll, rather than at 5.54%; (2) to discontinue any further efforts or actions to prevent state agencies from making contributions at 5.54% of payroll, the rate established by the actuary of the Illinois State Retirement System; and (3) to approve all vouchers submitted to him for approval based upon 5.54% contribution rate.

The Attorney General for the State of Illinois moved to consolidate the two actions, which motion of consolidation was granted by the trial court.

Thereafter, the Attorney General filed an answer for all defendants in No. 526-71, except for John McCarter, admitting all of the essential elements of the complaint. He also filed an answer for the defendants in No. 542-71, except for John McCarter, admitting all of the essential elements of the complaint.

John McCarter, Jr., individually and as Director of the Department of Finance of the State of Illinois and as member of the Board of Trustees of the State Employees' Retirement System by separate counsel filed a motion to dismiss the consolidated complaint.

A motion for summary judgment was granted against the Board of Trustees of the State Employees' Retirement System of the State of Illinois. An order was entered against the board to take all necessary action with sixty days to make effective its order that the amount of State contribution be in the amount of 5.54% of the employees' base pay.

In February 1972, a petition for rule to show cause for contempt against defendant was filed. This was denied and leave granted to file a *mandamus* action against McCarter. Petition for *mandamus* was filed. McCarter moved to strike the petition for *mandamus*. Upon hearing, the writ of *mandamus* was granted. Appeal here is from the order directing the writ of *mandamus* to issue.

Appellant McCarter contends that the State Finance Act imposes a discretionary duty upon him as Director of Finance, the exercise of

·which cannot be interfered with by *mandamus,* and that plaintiffs have no capacity or standing to initiate or pursue the *mandamus* proceeding.

Appellant contends that section 35.3 of the Civil Administrative Code of Illinois (Ill. Rev. Stat. 1971, ch. 127, par. 35.3) places the duty on the Director of Finance to "place financial responsibility on state agencies and to hold them accountable for the proper discharge of this responsibility." Thus, he contends the discretionary exercise of this statutory duty is not subject to judicial interference by *mandamus.* In support of this he cites the fact that after the enactment of the above statute, the legislature created the Bureau of the Budget, effective July 1, 1970, and gave it *pre-appropriation responsibilities.* Thus, he contends that since section 35.3 was not thereafter changed, it must have been intended by the legislature that the Director of Finance be left with a requirement to protect the cash flow characteristics of the general revenue fund against insolvency and to so order the priorities of state agencies that essential state services will not have to be summarily suspended because of the absence of funds (not appropriations).

An analysis and study of the applicable provisions of the Act creating the State Employee's Retirement System of Illinois (Ill. Rev. Stat., ch. 108½, pars. 14—101, *et seq.*), shows a legislative intent to create a retirement and benefit system to provide retirement annuities and other benefits for employees of the State of Illinois. Its purpose, expressed in section 14—102, is to provide an orderly means whereby aged or disabled employees may be retired from active service, without prejudice or hardship, and to enable the employees to accumulate reserves for themselves and their dependents for old age, disability, death and termination of employment, thus effecting economy and efficiency in the administration of the State Government.

Section 14-169 of the Act provides for the funding of the retirement and benefit system. It requires the State to meet the requirements of the System by appropriations to each department, or from monies otherwise made available for its purpose, along with member contributions, interest income from investments and other income received by the System. It specifically requires that such sources of funds "shall be sufficient to meet the cost of maintaining and administering the system on a *funded basis in accordance with actuarial reserve requirements."* (Emphasis added.) Section 14—169 then sets up a formula for the State contributions required to be appropriated for any fiscal year as "at least be equal to the annual average of the projected expenditures for a period of 10 years next following the year for which a contribution is to be made" for certain thereinafter specified purposes. It then provides that such State

contributions shall be determined by the actuary and approved by the board, based upon such sum formula. Other factors the actuary and board are to consider are set forth in the section.

Section 14—170 of the System Act specifically provides it is the obligation of the State of Illinois to pay the required department contributions, all allowance, annuities and benefits granted under the Act, and all expenses of administration of the System.

Section 14—186 of the System Act sets forth the duties of the actuary of the system, which include the annual determination of the amount of contributions required by the State under the Act, and certification of such amount to the Board. Section 14—182 of the System Act requires the Board to certify to each department in even numbered years the per cent of contribution, based upon employees' compensation, required to be paid to the System during the succeeding fiscal biennium, upon recommendation of the actuary.

Section 14—189 of the System Act requires the Director of Finance to approve the payrolls, if they are prepared in accordance with the System Act sections.

The trial court held that the legislature, in the foregoing sections of the State Employees' Retirement System Act, in establishing a procedure for the funding of pensions, did not make the establishment of the appropriate contribution rate subject to any modification by the Director of Finance.

■■ We agree. The statute creating the retirement system expressly provides the manner by which the amount of State contributions to the System are to be determined. Adequate funding is essential to the stability, indeed the very existence, of a retirement system. The System Act clearly manifests a firm legislative determination that the benefits of the system and its administrative costs be adequately funded "in accordance with actuarial reserve requirements." (Section 14—169(a).)

The pleadings established that the actuary of the System, acting pursuant to his "statutory duty and authority," determined the amount of State contributions for the fiscal year July 1, 1971 to June 30, 1972 should be in the amount of 5.54% of an employee's base pay. The Board thereafter received and approved this recommendation, and certified such amount, pursuant to their statutory duty and authority. Thereupon, the State became obligated to pay contributions to the System of 5.54%. The 77th General Assembly made appropriations of 5.54% to the various State agencies, as the statutes prescribed and in full accord with its obligation expressed in its statutes.

■■ The Director of Finance, in ordering a reduction in the amount of the State contributions to the System, violated his duty as an ex-officio

member of the Board of the System in failing to comply with section 14—189 of the System Act (Ill. Rev. Stat., ch. 108½, par. 14—189), which required him to "approve such payrolls if they are prepared in accordance with Section 14—188 of this Article." No question is raised that the payroll vouchers were not so prepared.

The Director of Finance disapproved the rate of State contributions, no doubt because his view was that such contributions would create budgetary problems. No doubt he sincerely believed this problem would arise. Had he acted properly under his "double hat" position as an ex-officio member of the System Board, he should have sought to persuade the System Board to review and change the actuary's recommended contribution rate before the Board certified the rate and the legislature appropriated funds based upon the certification. Thereafter, as ex-officio member of the Board, it was his duty as a trustee of the System, under the System Act, to assure proper preparation of the payroll vouchers and to approve them.

■■ We must construe section 35.3 of the Civil Administrative Code (Ill. Rev. Stat., ch. 127, par. 35.3), with the applicable sections of the State Employees' Retirement System of Illinois Act, *supra,* and if possible, give both effect in their particular areas. This is the historic and logical basic rule of statutory construction. The general language of the powers and duties of the Director of Finance under the Civil Administrative Code cannot be held to override the specific powers and duties given him in the State Employees' Retirement System of Illinois Act. To permit such an interpretation would, in effect, render several specific sections and provisions of the System Act a complete nullity.

The new Illinois Constitution of 1970, effective July 1, 1971, appears to have no effect on the interpretation or validity of the statutes here involved, except as it may have eliminated indirectly the old case law distinction between voluntary and compulsory pension systems. However, if applicable at all, it would serve only to strengthen the position of the System over the contentions here of the Director of Finance.

As to the matter of the contribution factor, it is obvious that the contentions of appellee prevail over those of appellant. The Director of Finance should have honored the statutory requirements and not have attempted to reduce the statutorily authorized certified contribution rate of the Board of the State Employees' Retirement System.

The cited case of *State v. Brandjord,* 92 P.2d 273 (Montana, 1939), is neither controlling nor persuasive here. We find no discretionary power or authority was placed in the Illinois Director of Finance by the Illinois statutes involved and applicable to this proceeding.

■■ Having held as we have, little remains to be said of the further

contention of appellant that plaintiffs, Illinois State Employees' Association, a voluntary not-for-profit association, Council 34, Illinois State Employees' Union, and the individual State employees named have no standing in this case. There is no question such plaintiffs are proper parties to bring the suit they filed, both as a voluntary association and as individuals in a class suit. This is particularly true since the new Judicial Article of the Illinois Constitution of 1970 in section 9 provides that the "Circuit Courts shall have original jurisdiction of all justiciable matters * * *" (Ill. Const. 1970, Art. VI, Sec. 9) and since the Illinois Civil Practice Act long ago abolished all distinctions in Illinois between law and equity. See also *Droste v. Kerner* (1966), 34 Ill.2d 495, 217 N.E.2d 73; *Paepcke v. Public Building Com. of Chicago* (1970), 46 Ill.2d 330, 263 N.E.2d 11; *Carpenters Union v. Citizens Committee* (1928), 333 Ill. 225, 164 N.E. 393; *Wade v. Grand Lodge Brotherhood of Trainmen*, 247 Ill.App. 532.

The Attorney General as attorney for all the Board of Trustees of the Retirement System, except for the defendant McCarter, has adopted the view of the plaintiffs that McCarter does not have statutory duties which are incompatible with the relief requested. Further, the Attorney General is in agreement that the Director was without authority to order the reduction. The exclusive statutory authority to determine the amount of the State contribution rests with the actuary and the System's Board of Trustees.

The judgment order of the circuit court of Sangamon County was correct and that judgment is affirmed.

Judgment affirmed.

SMITH and SIMKINS, JJ., concur.