ALFRED ENGINEERING, INC., et al., Plaintiffs-Appellees, v. ILLINOIS FAIR EMPLOYMENT PRACTICES COMMISSION et al., Defendants-Appellants.

(No. 12251;

—May 27, 1974.

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel, Assistant Attorney General, of counsel), for appellants.

Winston & Strawn, of Chicago, and Robert E. Dehen, of Springfield, for appellee.

John Hudson and Judith S. Bernstein, both of Chicago, for amici curiae The Chicago Council of Lawyers.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

This case is here upon an interlocutory appeal from an order of the circuit court of Sangamon County granting a preliminary injunction against the Illinois Fair Employment Practices Commission and its individual members, restraining the enforcement of certain rules and regulations of the Commission with reference to an affirmative action program relating to public contracts. We reverse and remand with directions to dismiss the complaint for want of equity.

A complaint in chancery and for declaratory judgment was filed in the circuit court on March 30, 1973, alleging that the Commission had promulgated certain rules and regulations, the substantive effect of which was to require bidders, contractors, and sub-contractors to undertake certain affirmative action programs with reference to minority employment in connection with contracts for State goods and services. The complaint purported to be filed on behalf of the listed plaintiffs and

all other contractors similarly situated; in short, it purported to be a class action.

On the same day, a motion for a temporary restraining order was filed; the motion was allowed, and the court ordered an injunction to issue, without bond or notice, restraining the enforcement of the rules and regulations and setting a motion for a preliminary injunction for a hearing on April 10, 1973. On April 6, a motion was filed to vacate the temporary restraining order. Thereafter, on April 10, a preliminary injunction was issued of the same substantive effect as the original temporary restraining order. Upon appeal, this court entered an order staying the force and effect of the preliminary injunction. This interlocutory appeal follows.

Essentially, the complaint upon which the extraordinary injunctive relief was granted by the trial court sought a declaratory judgment and an injunction barring the enforcement of the rules and regulations which were alleged to be in excess of the statutory authority of the Commission, arbitrary, discriminatory, overly vague and oppressive; and an attempt to establish unlawful and unconstitutional procedure for bidding on State construction contracts, and, finally, an invasion of a federally preempted field. Plaintiffs and all of the class which they purport to represent are employers and contractors or subcontractors as defined in the attacked rules. Plaintiffs and the class they represent are described as ones who would seek construction contracts with the State and who have been awarded past construction contracts with the State upon State construction bids with a value in excess of $500 million.

The rules and regulations provide for affirmative action to eliminate discrimination in the construction industry and are purportedly promulgated pursuant to sections 4 and 4A of the Illinois Fair Employment Practices Act (Ill. Rev. Stat. 1973, ch. 48, ¶¶ 854, 854A):

"Public Contracts. Every contract to which the State, any of its political subdivisions or any municipal corporation is a party shall be conditioned upon the requirement that the supplier of materials or services or the contractor and his subcontractors, and all labor organizations furnishing skilled, unskilled, and craft union skilled labor, or who may perform any such labor or services, as the case may be, shall not commit an unfair employment practice in this State as defined in this Act. To the full extent to which the State may have authority with respect to such contracts, this Section shall be applicable.

Rules and regulations. The Commission shall have the authority to issue rules and regulations for the purposes of enforcement and administration of Section 4 of this Act and rules and regula-

tions adopted hereunder. All rules and regulations adopted under this Section shall be consistent with Section 4.

No contract shall be awarded by the State to any employer found by the Commission to have violated its rules and regulations until the Commission shall certify that the violation has ceased. For each violation that occurs there may be deducted from the amount payable to the contractor by the State of Illinois a penalty of $5 for each calendar day that the violation persists. Further, the State, any of its political subdivisions or any municipal corporation may avoid any such contract at its option and it may sue and shall recover the profits earned on such contract. Added by P.A. 77-1552, § 1, eff. Sept. 17, 1971."

An allegation in the complaint is to the effect that the rules and regulations are beyond the authority of the Commission, it being the contention of the plaintiffs that the Commission is limited to rules and regulations with reference to specific statutorily defined unfair employment practices. Section 3 of the Act does provide that nothing in the Act shall preclude an employer from hiring or selecting between persons for any reason except for the unfair employment practices specifically prohibited by the Act. Thus, in substance, the plaintiffs contend that there is no statutory authority for the Commission to undertake affirmative action plans since discriminatory employment is an unfair employment practice by statute and under-utilization of minorities and women is not an unfair employment practice. The relevant rules and regulations are:

SECTION 2.6. The term "Contractor" means any person who bids or applies for, who is considered for, or who has been awarded a contract by a contracting agency either through a competitive bidding procedure or otherwise.

Section 2.9. The term "Responsible" describes any person who conforms to the Equal Employment Opportunity requirements of these Rules and Regulations and is therefore eligible to bid on or be awarded a contract or subcontract.

Section 2.13. The term "underutilization" means having fewer minorities or women in a particular job classification than would reasonably be expected by their availability.

Section 3.1. Each contracting agency shall insure that every contract to which it is a party shall contain the following clause:

EQUAL EMPLOYMENT OPPORTUNITY

In the event of the contractor's noncompliance with any provision of this Equal Employment Opportunity Clause, the Illinois Fair Employment Practices Act or the Fair Employment Practices

Commission's Rules and Regulations for Public Contracts, the contractor may be declared nonresponsible and therefore ineligible for future contracts or subcontractors with the State of Illinois or any of its political subdivisions or municipal corporations, and the contract may be cancelled or avoided in whole or in part, and such other sanctions or penalties may be imposed or remedies invoked as provided by statute or regulation.

During the performance of this contract, the contractor agrees as follows:

(1) That it will not discriminate * * * and that it will examine all job classifications to determine if minority persons or women are underutilized and will take appropriate affirmative action to rectify any such underutilization.

(2) That, if it hires additional employees in order to perform this contract or any portion hereof, it will determine the availability (in accordance with the Commission's Rules and Regulations for Public Contracts) of minorities and women in the area(s) from which it may reasonably recruit and it will hire for each job classification for which employees are hired in such a way that minorities and women are not underutilized.

(4) That it will send to each labor organization * * * with which it has or is bound by a collective bargaining or other agreement * * * a notice advising such labor organization * * * of the contractor's obligation under the * * * Act and the Commission's Rules * * *. If any such labor organization * * * refuses to cooperate with the contractor in its efforts to comply with such Act and Rules and Regulations, the contractor * * * will recruit employees from other sources * * *.

(7) * * * [N]o contractor will utilize any subcontractor declared by the Commission to be nonresponsible * * *.

Section 4.1 (b) Each contractor and subcontractor shall examine all its job classifications to determine if minority persons or women are underutilized in any such classifications (See section 4.2 hereof). If underutilization exists in any job classification, the contractor or subcontractor shall take appropriate affirmative action to rectify any such underutilization.

Section 4.2 (a) Underutilization of minorities means having fewer minority workers in a particular job classification than would reasonably be expected by their availability. The availability of minority workers for any job classification shall be determined by the minority population percentages of the area(s) from which the contractor or subcontractor may reasonably recruit and the

unemployment rates of minorities as compared to unemployment rates of nonminorities in such area(s). In addition, the contractor or subcontractor shall consider in such recruitment area(s):

(i) the size of the minority unemployment force;

(ii) the numbers of minorities having requisite skills;

(iii) the promotable and transferable minorities within the contractor's or subcontractor's organization;

(iv) the existence of training institutions capable of training persons in the requisite skills; and

(v) the degree of training which the contractor or subcontractor is reasonably able to undertake as a means of making all job classifications available to minorities.

(b) [Identical to 4.2) (a) except "women" is substituted for "minorities".]

Section 4.3 Affirmative Action Plans. When required pursuant to Sections 4.1, 5.1 or 5.2 hereof, contractors and subcontractors shall develop and implement written affirmative action plans, acceptable to the Commission, to overcome underutilization of minority persons and/or women. An acceptable affirmative action plan shall include:

(i) a description of the contractor's or subcontractor's workforce analysis made in accordance with Section 4.2 hereof; and

(ii) goals and timetables to which the contractor's or subcontractor's recruitment, hiring or promotion efforts shall be directed to correct any identified underutilization. * * *

Affirmative action plans developed pursuant to another governmental program may be accepted by the Commission. Contractors or subcontractors found by the Commission not to be underutilizing minorities or women according to Section 4.2 hereof shall not be required to develop an affirmative action plan.

Section 4.5. * * * If any labor organization with which such contractor or subcontractor has an exclusive hiring or referral arrangement fails or refuses to refer minority or female applicants to the contractor or subcontractor in numbers sufficient for it to meet its obligations under these Rules and Regulations and any affirmative action plan, the contractor or subcontractor shall solicit and employ minority or female applicants from other sources. It shall be no excuse that the labor organization with which the contractor or subcontractor has such an agreement failed to refer sufficient minority or female employees.

Section 5.1. (a) Beginning July 1, 1973, no person shall be eligible to bid on a contract subject to the competition bidding require-

ments of the Illinois Purchasing Act * * * unless such person at least ten days prior to bid opening:

(1) is prequalified by the Commission as to its equal employment opportunity responsibility; or

(2) is not subject to a current Order of Noncompliance and has pending before the Commission a current application for such prequalification, * * * which has not been denied by the Commission.

(b) The Commission will [make a] determination as to whether the applicant shall be so prequalified to bid on contracts.

(c) If, in the course of a compliance review conducted pursuant to Section 5.3 hereof, the Commission finds that a prequalified bidder or applicant for prequalification is underutilizing minorities and/or women in any job classification * * * it shall require the prequalified bidder or applicant for prequalification to submit an acceptable affirmative action plan * * *. If such person fails or refuses to submit an acceptable affirmative action plan, the Commission shall issue and serve an Order of Noncompliance * * * suspending or revoking such prequalification.

Section 5.2 (a) Beginning April 1, 1973, all bidders on construction contracts subject to the competitive bidding requirements of the Illinois Purchasing Act * * * shall complete and submit along with and as part of their bids, a Bidder's Employee Utilization Form—Construction * * * setting forth a projection and breakdown of the total workforce intended to be hired and/or allocated to such contract work by the bidder including a projection of minority and female employee utilization in all job classifications on the contract project.

(b) The contracting agency letting such a contract shall review the * * * projections * * * of the contract awardee to determine if such projections reflect an underutilization * * *. If it is determined that the contract awardee's projections reflect an underutilization * * * it shall be advised in writing of the manner in which it is underutilizing and such awardee shall be considered to be in breach of the contract unless prior to commencement of work on the contract project, it submits an acceptable written affirmative action plan to correct such underutilization including a specific timetable geared to the completion stages of the contract.

Section 5.4. (a) If, pursuant to a compliance review, the Commission determines that a contractor, subcontractor, applicant for prequalification or prequalified bidder is not in compliance with

the Act or these Rules and Regulations, the Commission shall issue and serve upon such person and any contracting agency a written Order of Noncompliance setting forth the manner in which it finds such person has violated these Rules and Regulations and imposing and/or requiring the imposition of appropriate legal sanctions, such as for example: (i) denying, suspending or revoking prequalification or declaring the contractor or subcontractor nonresponsible and ineligible for future contracts or subcontracts until such time as the contractor or subcontractor shall demonstrate to the Commission, in accordance with Section 5.8 hereof, that it is in compliance; (ii) withholding or delaying payment on the contract; (iii) suspending, avoiding or cancelling contract work; (iv) assessing the statutory monetary penalty.

(b) A person that has been found * * * to have violated the Act or these Rules and Regulations may appeal the Commission's Order of Noncompliance by filing with the Commission, within ten (10) days after service of the Order upon it, a written request for a hearing. * * * An Order of Noncompliance shall become an Order and Decision of the Commission if, upon expiration of the period during which any party may appeal therefrom, no such appeal shall have been taken.

ARTICLE VII—Judicial Review. Any person who desires to contest an Order and Decision of the Commission issued pursuant to these Rules and Regulations in a matter to which it was a party may apply for and obtain judicial review thereof as provided in Section 10 of the Act.

■■ The temporary restraining order has expired, having been supplanted by the preliminary injunction. Both orders are appealable however by an interlocutory appeal under Supreme Court Rule 307. See *Bohn Aluminum & Brass Co. v. Barker,* 55 Ill.2d 177, 303 N.E. 2d 1.

In the trial court and in this court the defendants have contended that it was error to grant injunctive relief, asserting that the plaintiffs lacked standing to sue; that the rules and regulations are valid, and finally, that the issues presented upon this appeal are not ripe for judicial determination in that the plaintiffs have an adequate remedy at law.

Recently this court discussed circumstances under which injunctive relief was available without notice and without bond. That which we observed in *Hill v. Village of Pawnee,* 16 Ill.App.3d 208, 305 N.E.2d 740, is applicable here insofar as it relates to the temporary restraining order. The preliminary injunction was issued after notice but without bond.

Upon this interlocutory appeal we do not reach the merits of the case,

the single justiciable issue being whether the trial court properly granted the preliminary injunctive relief. (*Hill v. Village of Pawnee.*) However, upon an interlocutory appeal, the appellant is permitted to ask this court to determine not only whether the trial court had the discretionary right to issue the temporary or preliminary injunction but also to consider whether or not the complaint upon which the temporary injunction was issued was proper to sustain such injunction (*Ware v. D.R.G., Inc.,* 17 Ill.App.3d 758, 307 N.E.2d 740) or to sustain a judgment.

■■■ The alleged irreparable injury to the plaintiffs is central to several issues upon this appeal. It relates to the issue of standing, justiciability, and the likelihood of the success upon the merits—all of which are relevant to, and in fact determinative of, plaintiffs' right to temporary injunctive relief. An obvious and threshhold difficulty in the complaint relates to the allegation of injury. The basic injury alleged is that the plaintiffs will be impaired in their ability to bid *competitively* for State contracts. The fact that this suit is brought as a class action clearly indicates that no competitive injury could result to any of the plaintiffs. The class is composed of all contractors who intend to compete with each other in bids for State contracts. We fail to perceive how the allegedly invalid regulations can affect plaintiffs uniformly as a class and competitively at the same time. Indeed, such is not possible. There is no allegation that the attacked regulations are not applicable to every member of the class and there is no allegation that any member is less able to comply with the regulations than other members of the class, all of whom are described as *prospective* bidders. Thus, each plaintiff as a *prospective* bidder is on an equal footing with all others. Injury by reason of competitive disadvantage cannot exist.

Upon the issue of the plaintiffs' standing to sue and ripeness for judicial determination, we consider three United States Supreme Court cases handed down on the same day in which the Court sought to distinguish between cases where pre-enforcement judicial determination of agency rules would be considered. The Court limited judicial pre-enforcement review in the Federal courts to administrative rules and regulations involving a straightforward legal issue and discussed the fitness of the issue for judicial decision and the hardship to the parties of withholding Court consideration. (*Abbott Laboratories v. Gardner,* 387 U.S. 136, 18 L.Ed.2d 681, 87 S.Ct. 1507; *Toilet Goods Association, Inc. v. Gardner,* 387 U.S. 158, 18 L.Ed.2d 697, 87 S.Ct. 1520; *Gardner v. Toilet Goods Association, Inc.,* 387 U.S. 167, 18 L.Ed.2d 704, 87 S.Ct. 1526.) While this case does involve the issue of whether or not the regulations are authorized by statute, it also involves pre-enforcement adjudication upon a factual situation totally unlike that found in *Toilet*

*Goods Association, Inc. v. Gardner.* Here, the alleged immediate severity of the regulations' impact upon the plaintiffs in no way indicates pre-enforcement relief. The feared injury here is clearly *prospective* and it is neither severe nor immediate.

 Furthermore, Illinois has indicated that there is a distinct difference between the Federal requirements of justiciability and those of this State. (*Cusack v. Howlett,* 44 Ill.2d 233, 254 N.E.2d 506.) It is clear however that the rationale of *Perkins v. Lukens Steel Co.,* 310 U.S. 113, 84 L.Ed. 1108, 60 S.Ct. 869, insofar as it relates to governmental freedom of contract, is applicable in Illinois. Thus, in *Bradley v. Casey,* 415 Ill. 576, 114 N.E.2d 681, our supreme court quoted with approval language to the effect that a contractor is not allowed to do public work in any mode he may choose to adopt without regard to the wishes of the State. In this connection, we note that the contractors do not appear here, nor allege themselves to be, nor assert their right to relief as taxpayers. Thus, the line of cases with reference to the right of a taxpayer to enjoin expenditures of public funds have no application.

The plaintiffs' reliance upon *Illinois State Employees, Association v. McCarter,* 9 Ill.App.3d 764, 292 N.E.2d 901, is misplaced. There the individual plaintiffs and the associations had a direct, immediate and non-speculative interest in a straightforward legal issue that was ripe for determination. In this case, the burdens allegedly placed upon the plaintiffs are clearly prospective only and any injury, if one is even determined to exist, is speculative and wholly dependent upon a series of future contingencies. While the plaintiffs must prequalify they are really subject to the specificities of the rules complained of only if as bidders they succeed in being awarded a contract and then only if, as contractors, the rules and regulations are not waived, or only if they somehow become aggrieved by reason of the administration of the rules and regutions that after a hearing may result in an order of noncompliance.

Section 5.1 of the rules and regulations provides for prequalification of prospective bidders while section 2.6 defines "Contractor" to include any person who bids or applies for a contract or who has been awarded a contract. We note that section 3.1 requires that each contracting state agency shall insure that every contract shall contain the Equal Employment Opportunity clause. That clause is limited in its application to "Contractor" used in the sense of a bidder that has been awarded a contract.

The rules further provide for intra-agency proceedings to determine compliance. Any finding of noncompliance by reason of the intra-agency proceedings is subject to an administrative hearing in accordance with the procedures detailed in the rules. After the administrative proceedings

have been completed, any person who desires to contest any order that the Commission might enter has the right to apply for and obtain judicial review of such order. (See Ill. Rev. Stat. 1971, ch. 48, ¶ 860.) In this case, therefore, administrative and judicial review are available to any person who can establish a grievance. The availability of this elaborate machinery to the plaintiffs and all members of the class which they purport to represent clearly shows that they have an adequate remedy at law. This appears from the complaint and its attachments.

We also note that the Fair Employment Practices Act has no provision for pre-enforcement review of rules and regulations of the Commission whereas the legislature has provided for pre-enforcement review of rules and regulations of another agency—the Pollution Control Board. Such provision is found in the Environmental Protection Act. Ill. Rev. Stat. 1971, ch. 111½, ¶ 1029.

■■ We next consider the contention of the plaintiffs that the federal government has acted to establish affirmative action programs and that the action of the Federal government is applicable to construction in Illinois. It is urged that the Federal regulations are preemptive and that under the Supremacy Clause Illinois is lacking authority to issue such regulations. While we dispose of this case upon the issues hereinabove discussed, it is appropriate to note that the United States Court of Appeals (1st Cir.) considered like contentions in *Associated General Contractors v. Altshuler*, 490 F.2d 9, 15, *cert. denied*, 42 U.S. L.W. (U.S. April 22, 1974), and concluded:

> "Nor is there any indication that the federal government has intended to preempt this field. Federal preemption should not be presumed, absent 'a clear manifestation of intention' to preempt the field. *Schwartz v. Texas*, 344 U.S. 199, 202-203 (1952); *see also New York State Department of Social Service v. Dublino*, 41 U.S.L.W. 5047 (U.S. June 21, 1973). The President's Executive Order merely requires that contractors take some 'affirmative action' and directs the Secretary of Labor to 'use his best efforts' through 'state and local agencies' as well as federal agencies. The Secretary of Labor has stated, as amicus curiae, that the federal program is not meant to preempt state programs such as the Commonwealth's § 1B. And congressional policy in this area, as expressed in Title VII of the Civil Rights Act of 1964, the statute most closely analogous to the President's Executive Order, is clearly one of encouraging state cooperation and initiative in remedying racial discrimination. Title VII, 42 U.S.C. § 2000h-4 expressly disclaims any intent to preempt state action. *See also*

*Voutsis v. Union Carbide,* 452 F.2d 889 (2d Cir. 1971), *cert. denied,* 406 U.S. 918 (1971)."

We agree.

Accordingly, we hold that the action of the trial court in the issuance of the preliminary injunction was error. We further hold that the permanent relief sought cannot be obtained upon this complaint by these plaintiffs, thus remandment to the circuit court for further consideration is not warranted. The order of the circuit court of Sangamon County is reversed.

Reversed.

SMITH, P. J., and SIMKINS, J., concur.