KENNETH H. SCOTT, Indiv. and d/b/a Kenneth H. Scott Insurance Agency, Plaintiff-Appellant, v. ASSURANCE COMPANY OF AMERICA *et al.*, Defendants-Appellees.

Fourth District   No. 4—93—0289

Argued June 22, 1993.—Opinion filed December 16, 1993.—
Rehearing denied January 19, 1994.

COOK, J., dissenting.

Michael J. Tague (argued), of Flynn, Palmer & Tague, of Champaign, for appellant.

Richard T. West (argued), of Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, P.C., of Champaign, for appellees.

JUSTICE GREEN delivered the opinion of the court:

On December 3, 1992, plaintiff Kenneth H. Scott filed a three-count complaint in the circuit court of Champaign County against various insurance companies, all doing business as Maryland Casualty Companies (hereinafter defendant). In those counts plaintiff sought (1) declaratory relief concerning his rights, under his contract with defendant as its agent, as an "insurance producer" to directly bill for premiums due from defendant's policyholders on policies issued by his agency; (2) money damages for defendant's refusal to permit him to do so; and (3) injunctive relief to prevent defendant from refusing to allow him to make such direct billings. Section 491.1(b) of the Illinois Insurance Code (Code) (215 ILCS 5/491.1(b) (West 1992)) defines an insurance producer as one who "solicits, negotiates, effects, procures, renews, continues or binds policies of insurance covering property or risks located in Illinois."

After an evidentiary hearing on "the issues joined," as to count III, the count seeking injunctive relief, the circuit court entered an order on March 2, 1993, refusing to grant a preliminary injunction and also dismissing that count in bar of action. Plaintiff has filed in the circuit court a "NOTICE OF INTERLOCUTORY APPEAL" pursuant to Supreme Court Rule 307 (134 Ill. 2d R. 307), purporting to be from both aspects of that order. We have no question concerning the appealability of the denial of the request for a preliminary injunction pursuant to Supreme Court Rule 307. We are concerned with the appealability, under Supreme Court Rule 307, of that part of the order dismissing the cause of action.

The issue in a Supreme Court Rule 307 appeal concerning a ruling on a request for preliminary relief is whether the circuit court ruled properly in that regard and the merits of the underlying case are not at issue. (*Hill v. Village of Pawnee* (1973), 16 Ill. App. 3d 208, 209, 305 N.E.2d 740, 741.) However, in *Alfred Engineering, Inc. v. Illinois Fair Employment Practices Comm'n* (1974), 19 Ill. App. 3d 592, 312 N.E.2d 61, in a Rule 307 appeal from an order granting interlocutory injunctive relief, this court not only reversed the order granting that relief but also held that the complaint was insufficient

to support any type of injunctive relief. Regardless of the possible ramifications of that decision, the issue of the sufficiency of the proof to ultimately decide count III is not before us in passing on an order *denying* temporary relief. The arguments of the parties are devoted almost entirely to the issue of preliminary relief. We conclude that we must *sua sponte* dismiss that portion of the appeal which pertains to the dismissal of count III in bar of action. The propriety of that ruling must be decided at a future time even though it is closely related to the issue before us.

In seeking a preliminary injunction in count III, plaintiff alleged that the threatened unilateral action by defendant to require that it, rather than plaintiff, send premium bills to most of defendant's insureds on policies issued through plaintiff would cause immediate and irreparable harm to plaintiff's business relationship with his clients, for which no adequate remedy at law existed. Plaintiff further alleged that he was likely to prevail on the merits and that maintenance of the status quo would not cause defendant substantial hardship.

■ In order for a preliminary injunction to issue properly, the party seeking the injunction must establish (1) that he possesses a certain and clearly ascertainable right or interest needing protection; (2) there is no adequate remedy at law; (3) irreparable harm will result if the injunction is not granted; and (4) there is a reasonable likelihood of success on the merits. (*Lee/O'Keefe Insurance Agency, Inc. v. Ferega* (1987), 163 Ill. App. 3d 997, 1002, 516 N.E.2d 1313, 1317.) In addition, the trial court must conclude the benefits of granting the injunction outweigh the possible injury which defendant might suffer as a result thereof. *Lee,* 163 Ill. App. 3d at 1003, 516 N.E.2d at 1317.

The decision to grant or deny preliminary injunctive relief rests within the sound discretion of the trial court. The role of a reviewing court is limited to a determination of whether those findings are contrary to the manifest weight of the evidence. (*Lee,* 163 Ill. App. 3d at 1003, 516 N.E.2d at 1317.) The circuit court here concluded that no reasonable likelihood of plaintiff succeeding on the merits was shown because of the lack of an ascertainable right to continue to bill for the premiums. We conclude that determination was not contrary to the manifest weight of the evidence.

Section 2 of the "Personal Insurance Agency Agreement," signed by the parties, attached to the complaint, and shown by the evidence to have been in force from September 1, 1991, stated as follows: "For premium collection, accounting and payment purposes, the Company shall designate policies as either agency bill or direct bill. The rules governing premium collection, accounting and payment are contained

in the attached Addendum A." Addendum A provides "premium collection, accounting and payment rules (Agency Bill and Direct Bill)" as follows:

"A. Direct Bill

For policies designated by the Company as 'direct bill', the Company shall assume responsibility for premium collection.
***

B. Agency Bill

For policies designated by the Company as 'agency bill', the Agent is required to collect premium on the Company's behalf, pursuant to the Agency Agreement and the following rules:
* * *

2. Reporting of Premium
The Company designates
the Agent as:
[ ] An Account Current Agent
[X] A Statement Agent[.]"

Note, the box in front of "Statement Agent" is marked with an "X."

The contract then provides rules for reporting premiums by either an "Account Current Agent" or a "Statement Agent." The former is required to, *inter alia*, "report all amounts due from Documents which were effective or issued (whichever is later) during the Accounting Month." For a "Statement Agent," "[t]he Company will send Statement Agents a statement of premiums charged by the Company to the Agent's account which are unpaid as of the end of the Accounting Month." Within 30 days of the statement's mailing date, the agent is required to provide written notice to the Company of the items on the statement with which the agent disagrees, the reason for the disagreement, and supporting documentation.

Plaintiff's theory of entitlement for relief begins with the assumption that the 1991 agreement was at least ambiguous as to whether he was to remain as an agent authorized to bill clients on most lines of insurance. He recognizes that the agreement stated that defendant could "designate policies as either agency bill or direct bill." However, he asserts that the subsequent statement in "Addendum A" designating him as "[a] Statement Agent" gives the agreement the ambiguity for which he contends. He maintains that such ambiguous language must be construed against the drafter, the defendant. (*Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314.) Plaintiff further maintains that evidence that the course of dealings between the defendant and him was such that he had been given the right to bill his customers prior to 1993 can be shown to

indicate the intent of the allegedly ambiguous 1991 contract. *Kenny Construction Co. v. Metropolitan Sanitary District* (1971), 52 Ill. 2d 187, 198, 288 N.E.2d 1, 7-8; *Marathon Plastics, Inc. v. International Insurance Co.* (1987), 161 Ill. App. 3d 452, 464, 514 N.E.2d 479, 486.

Plaintiff further maintains that superimposed upon the theories of construing the agreement against the drafter and in accordance with prior dealings is the existence of section 508.1 of the Code (215 ILCS 5/508.1 (West 1992)), which has stated the following at all pertinent times:

> "Any insurance company which delivers to any insurance producer in this State a policy or contract for insurance pursuant to the application or request of an insurance producer, *authorizes such producer to collect or receive on its behalf payment of any premium* which is due on such policy or contract for insurance at the time of its issuance or delivery and any premium which becomes due on such policy or contract not more than 90 days thereafter." (Emphasis added.)

Plaintiff maintains that the legislation creates a right on the producer (agent) to collect the premium and any agreement to the contrary would be illegal. Moreover, defendant maintains that even if section 508.1 is not to be given such a mandatory effect, it adds further weight to the construction to be given to the agreement he considers ambiguous.

We are not persuaded that section 508.1 of the Code is a substantial factor in the decision in this case. Notably, it merely requires that the "producer" (agent) have authority to collect or receive the premium. We interpret this to be a measure to protect a consumer who pays the agent from any further liability for the premium if the independent producer fails to remit to the insurer. If the legislation prohibited an insurer from determining the billing procedure to be used, the effect would be drastic and no indication of such an interpretation has been called to our attention.

Other aspects of the case are somewhat more complicated. Undisputedly, in November 1991, a written notice was sent out by defendant to its agents stating that beginning January 1, 1993, billing for premiums on the personal line of insurance, those involved here, would be done by defendant. Plaintiff denied original receipt of that notice but admitted he had seen a copy by sometime in February 1992, well more than 90 days prior to the date the change took effect. The agency agreement between plaintiff and defendant provided that it might be amended by defendant on matters of the nature involved here "after giving the Agent 90 days advance written notice." The

circuit court apparently considered this notice sufficient to negate any reasonable likelihood of plaintiff being entitled to the injunctive relief he requested.

James Bertrand, director of billings and collections for defendant, did testify to two letters he wrote to plaintiff in 1992. One, written February 25, 1992, stated that defendant had "concluded conversion of all items from Agency Bill to Direct Bill through May of 1992," and then stated that plaintiff should "return" future policies that he did not "wish to be Direct Bill." The letter then stated "[w]e have profiled the Agency Master File to indicate that you are to remain as an *Agency Bill agent* and hopefully, you will see *nothing come through* for your agency other than Agency Bill policies." (Emphasis added.) The letter of October 21, 1992, indicated that three policies were being rewritten as agency bill policies as per *"previous agreement."* (Emphasis added.) Bertrand explained these letters as referring to an agreement defendant had with plaintiff to permit personal insurance written by plaintiff in 1992 to be such that plaintiff could bill the clients for the premiums.

Plaintiff's testimony was supported by considerable documentation that he continuously objected to defendant's plans to prohibit him from continuing to bill most of his clients. Plaintiff also testified he believed that defendant's letters of February and October 1992 indicated that defendant was going to make an exception for him and permit him to bill his clients. We also note even without a written contract being ambiguous, a course of dealing between the parties is admissible "to explain, supplement, or add to the agreement (but not contradict it)." J. White & R. Summers, Uniform Commercial Code §2—10, at 85 (2d ed. 1980); see also 810 ILCS 5/2—208(2) (West 1992).

■ Even if all of plaintiff's testimony was believed by the circuit court, clearly in February 1992 plaintiff saw the written notification that defendant was amending its agreement with its agents to provide that it would do the billing in the personal line of insurance. Any misunderstanding which plaintiff may reasonably have had in regard to defendant's position on this point was ended by a written letter dated October 21, 1992, from defendant, received by plaintiff in late October 1992. This document clearly told plaintiff he would not be permitted an exception from defendant's billing rules. Similar information was set forth in a letter from defendant to plaintiff dated December 7, 1992. When, on March 2, 1993, the circuit court ruled on plaintiff's request for a preliminary injunction, plaintiff had more than 90 days' written notice of defendant's modification of the agreement of the parties and, at that time, was not entitled to bill the clients in ques-

tion and was, therefore, not entitled to injunctive relief to enable him to do so.

We, accordingly, affirm the circuit court's denial of a preliminary injunction. We dismiss the appeal to the extent that the dismissal of count III is concerned.

Affirmed in part; appeal dismissed in part.

KNECHT, J., concurs.

JUSTICE COOK, dissenting:

I respectfully dissent. The trial court denied plaintiff's request for a preliminary injunction because it found no ascertainable right on the part of plaintiff to continue direct billing. It is clear that plaintiff had such a right, as to applications which defendant had accepted, and I would reverse and remand with instructions that the injunction issue.

There is no real dispute as to the facts. Plaintiff is an independent insurance producer who sells defendant's insurance products to customers in the Champaign area. Since 1976 plaintiff has collected premiums from his customers and remitted those premiums, net of commission, to defendant. This procedure is known as "agency billing." Plaintiff asserts that his participation in the billing process is important to him in maintaining customer contact and is important to customers in providing policy service—allowing him, for example, to prevent policy lapses or cancellations due to nonpayment of premium. Plaintiff's involvement also allows him to determine at an early stage whether customers have been furnished the proper policy.

On September 1, 1991, plaintiff and defendant entered into an agency agreement which included a provision that "For premium collection, accounting and payment purposes, the Company shall designate policies as either agency bill or direct bill." At the time the agreement was entered into, plaintiff made it clear that he expected all policies submitted by him to be designated agency bill. In addendum A to the agreement defendant designated plaintiff as "A Statement Agent," an agent who engages in a particular type of agency billing. It is clear that defendant originally designated that plaintiff would engage in agency billing under the September 1, 1991, contract, and all policies were in fact so designated for at least two months.

Very quickly after the agency agreement became effective defendant sent a notice to its agents, in November 1991, that it, according to defendant's brief, intended to "change over all personal lines

agency bill policies to a direct bill system, beginning in January 1993." Plaintiff denies knowledge of this notice until he heard about it from another agent in February 1992. In January 1992, without any prior notice to plaintiff, defendant began to direct bill plaintiff's customers, who had already been billed by plaintiff. When plaintiff complained, defendant by letter dated February 25, 1992, apologized and stated that it had "profiled the Agency Master File to indicate that you are to remain as an Agency Bill agent and hopefully, you will see nothing come through for your agency other than Agency Bill policies."

Correspondence was then exchanged regarding whether plaintiff would be allowed to agency bill after January 1, 1993. Plaintiff continued to insist upon agency billing. Defendant refused to change its position. Finally on December 7, 1992, defendant wrote plaintiff it would no longer honor his agency bill status. Plaintiff argues the effective date of notice to him of defendant's decision was December 7, 1992, and not November 1991 or February 1992, but in my view the date of notice is of no significance.

After February 25, 1992, plaintiff continued to submit new business on applications requesting agency billing. In response defendant usually issued policies indicating agency billing; on some occasions defendant altered the applications by scratching out the request for agency billing and writing in "direct billing." When plaintiff learned of policies issued which provided other than agency billing he sent in policy change request forms which resulted in defendant reissuing those policies with agency bill designations. Those requests were honored until January 1, 1993, after which time defendant began to direct bill all policies and instructed plaintiff's customers that premium payments should not be made through the agency.

There is no dispute that for many years the relationship between plaintiff and defendant was one of agency billing. The September 1, 1991, document certainly does not express any agreement that plaintiff's policies in the future will be direct bill. Nor does the agreement clearly provide that defendant has the absolute right to choose the type of billing. The agreement provides defendant "shall designate" policies as either agency bill or direct bill. The word "shall" does not appear to vest any discretion in defendant, and the word "designate" is not synonymous with "choose." The language indicates only that defendant shall place appropriate markings on the various policies showing whether they are direct bill or agency bill. Even if the language were interpreted to give defendant the right to choose, there is no language which gives defendant the right to change a choice once made, and under addendum

A "The Company designates the Agent as: *** [X] A Statement Agent."

The Uniform Commercial Code does not apply directly to this case but its provisions provide a useful analogy. (See 810 ILCS 5/1—101 *et seq.* (West 1992).) The years during which plaintiff did agency billing (1976 to September 1, 1991) constitute a course of dealing between the parties which establishes a common basis of understanding for interpreting their expressions and other conduct. (810 ILCS 5/1—205(1) (West 1992).) A course of dealing gives particular meaning to and supplements or qualifies terms of an agreement. (810 ILCS 5/1—205(3) (West 1992).) If the parties had intended to abandon their long-standing practice of agency billing by adopting their September 1, 1991, agreement, surely they would have used clearer language than that found in the "shall designate" paragraph. Even after September 1, 1991, a course of performance of agency billing was accepted or acquiesced in without objection by the parties. That course of performance is relevant to determine the meaning of the agreement. (810 ILCS 5/2—208(1) (West 1992).) In fact, "The parties themselves know best what they have meant by their words of agreement and their action under that agreement is *the best indication* of what that meaning was." (Emphasis added.) (810 ILCS 5/2—208, Uniform Commercial Code Comment, at 124 (Smith-Hurd 1993).) Express terms control both course of performance and course of dealing (810 ILCS 5/2—208(2) (West 1992)) but there are no express terms in the September 1, 1991, agreement prohibiting plaintiff from agency billing.

The agreement contains a broad provision that:

"This Agreement may be amended by the Company after giving the Agent 90 days advance written notice ***. The amendment is effective after the required notice period, if any, regardless of whether it is signed by the Agent."

The argument that defendant had the right to make whatever contract changes it wanted to, and that plaintiff was required to accept them, is an amazing one. "An enforceable contract must include a meeting of the minds or mutual assent as to the terms of the contract." (*Academy Chicago Publishers v. Cheever* (1991), 144 Ill. 2d 24, 30, 578 N.E.2d 981, 984, citing *Midland Hotel Corp. v. Reuben H. Donnelley Corp.* (1987), 118 Ill. 2d 306, 313, 515 N.E.2d 61, 65.) An agreement to agree in the future is not an agreement. A contract which one party has complete power to change and bind the other party to is one which no person in his senses would make and which no fair and honest person would accept. See *Hartford Fire Insurance Co. v. Architectural Management, Inc.* (1990), 194 Ill. App. 3d 110, 116, 550 N.E.2d 1110, 1114.

The only reasonable way to read the amendment provision is that if plaintiff did not agree to any amendments within 90 days (and defendant continued to insist upon them) the contract was terminated. When defendant's notice to change to direct billing beginning in January 1993 was not agreed to by plaintiff, the existing contract between plaintiff and defendant was terminated. When plaintiff continued to submit additional applications, with insistence upon agency billing, those applications were accepted by defendant on a one-by-one basis, outside the September 1, 1991, agreement. Defendant had no authority to strike language in the applications requesting agency billing and replace those requests with language requesting direct billing. Defendant's acceptance of the applications had to mirror the terms of the offer before any contract could be made. Defendant's choice was either to accept the application with its request for agency billing, or to reject the application. Plaintiff has never agreed to direct billing. We should not make a new contract for the parties in which plaintiff agrees to direct billing. See *Academy*, 144 Ill. 2d at 30-31, 578 N.E.2d at 984.

During oral argument, in response to questioning from the court, defendant's counsel stated that defendant would be happy for plaintiff to walk away from this agreement. However, defendant would apparently expect plaintiff's customers to remain behind. One purpose behind section 508.1 of the Code, which authorizes an agent to collect or receive premium payments, is to protect insureds from misappropriation of their premium payments. Another purpose may be to protect local insurance agents from national insurance carriers who seek to divert customer loyalty from the agents to themselves. Certainly defendant could not refuse to accept payments which plaintiff had collected from his customers, nor could defendant require plaintiff to refuse to accept those payments.

Plaintiff possesses a certain and clearly ascertainable interest needing protection. Defendant's actions threaten plaintiff's relationship with his customers and therefore the very survival of his business. There is no adequate remedy at law. Once defendant is able to wedge itself between plaintiff and his customers so that the customers look to defendant and not to plaintiff, plaintiff will have suffered an irreparable loss. Plaintiff has a reasonable likelihood of success on the merits. The benefits of granting the injunction outweigh any possible injury to defendant as defendant has been able to live with agency billing for many years. The trial court should issue a preliminary injunction.