**ARCOS CORPORATION**

v.

**AMERICAN MUTUAL LIABILITY INSURANCE COMPANY.**

**Civ. A. No. 71-1319.**

United States District Court,
E. D. Pennsylvania.
Oct. 31, 1972.

William S. Rawls, Philadelphia, Pa., for plaintiff.

Gerald A. Dennehey, Philadelphia, Pa., for defendant.

## OPINION

BECHTLE, District Judge.

This matter is before the Court on plaintiff's motion for summary judgment in the amount of at least Fifty-Six Thousand Five Hundred Dollars ($56,500.00), on a claim under a comprehensive liability insurance policy, and defendant's cross motion for summary judgment mainly on the ground that the claim is of the type that falls within two of the exclusionary provisions of the policy. The parties have entered into a stipulation of facts, accompanied by ex-

hibits, which together, they assert, encompasses all facts which are material to this controversy. Save those issues as to certain items of damages, the parties agree there is no genuine issue as to any material fact in this case.

Plaintiff, Arcos Corporation, a Pennsylvania corporation with its principal place of business in Philadelphia, is engaged in the business of manufacturing and selling electrodes and welding wire for use in welding. To protect itself against products liability claims, plaintiff, Arcos Corporation, purchased from defendant, American Mutual Liability Insurance Company ("Company") a "Comprehensive General Liability Insurance Policy" for the years 1965 through 1968.[1] All these policies obligated the Company to pay on behalf of Arcos all sums which Arcos became legally obligated to pay because of damages to property caused by an accident arising out of products sold by Arcos.

The firm of General Dynamics needed weld wire to be used to make welds in a nuclear power plant of a submarine. For that purpose it ordered, on November 16, 1965, one thousand (1,000) pounds of "Inconel" weld wire from Arcos at a net price of Two Thousand Nine Hundred Eighty Dollars ($2,980.00). Arcos filled this order by delivering thirty-eight (38) spools of weld wire to the Electric Boat Division of General Dynamics at Groton, Connecticut, on March 2, 1966. The weld wire was not used immediately by the buyer and was stored away until the fall of 1968 when it was used in making welds in the power plant of a nuclear submarine. After observing cracks in the welds, General Dynamics discovered through procedures devised by it that some of the welds made with wire purchased from Arcos were unsatisfactory in that they were not composed of the same substance referred to as "Inconel." Since welds not made from Inconel weld wire did not have the chemical and physical properties required by the designers of the power plant system, and since General Dynamics believed that a failure of the power plant might place the entire submarine in jeopardy, it proceeded to rip out all joints not made with Inconel weld wire and to reweld them with that kind of wire. In the meantime, by memorandum dated October 15, 1968, General Dynamics notified Arcos that five (5) of the thirty-eight (38) spools of weld wire were "found to have 300 Series Stainless Steel" on them. On October 18, 1968, Arcos' insurance broker notified the Company that a claim was being made against Arcos for products sold by it.

On February 2, 1969, General Dynamics commenced two suits, one in trespass and one in assumpsit, against Arcos in the Court of Common Pleas of Philadelphia County. Arcos promptly forwarded the writs of summons to the Company. The attorney for the Company entered his appearance in both cases and filed a Rule in each of them. Responding to these Rules General Dynamics, on March 20, 1969, filed complaints seeking damages in excess of Eighty-Three Thousand Two Hundred Forty-Six Dollars ($83,246.00) for cost and expenses incurred by the buyer in:

1. Investigating and testing to locate and identify weld wire purchased on P.O. A–1101–603 and cost of locating welds made with the aforesaid weld wire;

2. Investigating weld chits (records) to determine which weldments contained the suspect heat number;

3. Developing mental monitor techniques to ascertain metalic content of the suspect welds;

4. Cost of ripping out and rewelding joints made with defective or suspective weld wire purchased from plaintiff, Arcos Corporation.

---

1. The policy was delivered in Pennsylvania and signed here for the Insurance Company by its duly authorized agent, and since the policy does not contain a provision conditioning its effectiveness on counter signature by defendant outside this state, Pennsylvania law governs its construction.

No damages were claimed for lack of use of the submarine or its parts. By letter dated April 15, 1969, the Company notified Arcos that it disclaimed all obligations under the policy and would take no further action to defend the suits. The reason given was that the claim made by General Dynamics is not a claim for damage to property and that the claim was not caused by an accident within the meaning of the policy because of the exclusions set forth in provisions (k) and (n) thereof. Arcos proceeded with the defense of the suits through its own counsel, and was later advised by General Dynamics that the damages amounted to One Hundred Eight Thousand Dollars ($108,000.00).

After conducting a thorough investigation into the facts and circumstances of General Dynamics' claim and attending several conferences with representatives of that firm, and upon being convinced that if the action were tried, a verdict in excess of One Hundred Thousand Dollars ($100,000.00) against it could be anticipated, Arcos settled the suits in April of 1970, by agreeing to pay General Dynamics a sum not to exceed Fifty-Four Thousand Dollars, ($54,000.00).

Are the amounts which Arcos agreed to pay General Dynamics in settlement of the two suits recoverable under the policy? The policy provided that the Company will pay on behalf of Arcos all sums which it shall become legally obligated to pay because of property damage to which the policy applies caused by an accident "which results during the policy period, in property damage neither expected nor intended from the standpoint of the insured." The Company does not dispute the fact that the damage suffered by General Dynamics as a result of the wrong weld wire being spun on spools marked "Inconel" was neither "expected" nor "intended" by Arcos.

In 1966 the insurance industry revised its standard comprehensive general liability policy. Contained in it were exclusion provisions (k) and (n), and those provisions appear in Arcos 1967–1968 policy, which the parties, for the purpose of this case, agree applies here. The Company contends that these two provisions are applicable to the property damage sustained by General Dynamics and therefore its claims against Arcos are not covered by the policy.

I

Provision (k), the so-called "business risk exclusion," provides that:

"This insurance does not apply: (k) to . . . property damages resulting from the failure of the named insured's products . . . to perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specification, advertising material or printed instructions prepared or developed by the insured; . . ."

The damage suffered by General Dynamics resulted from the failure of weld wire, shipped as Inconel, to perform the function or serve the purpose intended by Arcos. Arcos knew and expected that the weld wire that it delivered to General Dynamics would be used in securing the joints of a nuclear submarine. The nature of the use was such that the weld wire had to be a certain alloy to accommodate extraordinary stresses attending atomic reactors. The weld wire in question failed to possess the properties necessary to resist these extraordinary stresses. The damage which General Dynamics sustained from the use of the weld wire purchased from Arcos was "property damage" within the meaning of the policy. Bowman Steel Corporation v. Lumbermens Mutual Casualty Co., 364 F.2d 246, 249–250 (C.A.3, 1966); Pittsburgh Plate Glass Co. v. Fidelity and Casualty Co. of New York, 281 F.2d 538, 541–545 (C.A.3, 1960).

Provision (k) excludes coverage for property damage resulting from the

failure of a product to serve the purpose intended only if such failure is due to one or more of the six reasons set forth therein. The Company claims that the failure in this case was due to a physical or chemical failure of the weld wire's design or formula. As Arcos points out, a product may fail to serve its intended purpose for either of two reasons: first, it may be improperly designed from the beginning; or second, it may be rendered defective by an error in production. Arcos concedes that property damage resulting from the failure of the product to serve the purpose intended, where such failure is from the first cause, is excluded from coverage of the policy. However, it maintains that such property damage is not excluded if the failure is due to an error in production and that the Company ignores the distinction made in provision (k) between "production errors" and "design errors." There is no claim here that either the Inconel or stainless sections of the weld wire were of the wrong composition or size. Both Inconel and the stainless steel wire were of the proper alloy and caliber. But the latter substance did not serve the purpose of the former. The weld wire was defective because there was an unintentional and unexplained switch of stainless for Inconel. The stipulation of facts does not tell us how this occurred. Nevertheless, the facts in that stipulation make out a prima facie case for recovery under the policy on the part of Arcos. Under Pennsylvania law, where the insured makes out a prima facie case of liability, the burden of going forward with the evidence shifts to the insurer.

A defense based on an exception or exclusion in an insurance policy is an affirmative one, and the burden is cast on the insurer to establish it. Miller v. Boston Insurance Co., 420 Pa. 566, 218 A.2d 275 (1966). Rothstein v. Aetna Insurance Co., 216 Pa.Super. 418, 268 A.2d 233, 235 (1970). There is no stipulation of fact that the wrong weld wire was wrapped on some of the "Inconel" spools because of an error in design. In answer to Arcos' allegation in paragraph 8 of the complaint that it was advised by General Dynamics that some of the spools of wire sent to that firm by Arcos contained sections of wire other than Inconel, the Company averred that it was without knowledge or information to form a belief as to the truth of the averment set forth in paragraph 8 and therefore denied it and demanded proof of same. Except for statements in its brief in support of the cross motion for summary judgment that the failure of the weld wire to accomplish its intended purpose was the result of design error, the Company has not indicated that it will show or attempt to show by evidence that the failure was the result of design error. Statements by counsel in briefs may not be accepted as proven fact. Therefore, I must assume that there is no genuine factual dispute that the failure was the result of production error.

## II

Because General Dynamics sought to recover as damages the costs it incurred by reason of it having to "reinspect, rip-out, replace and repair various welds heretofore made", the Company argues that such damages are excluded by provision (n), the so-called "sistership exclusion,"[2] of the policy which provides:

"This insurance does not apply: (n) to damage claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products . . . or of any property of which such products . . . form a part, if such products, work or property are withdrawn from the market or from

2. This description is derived from an incident in the aircraft industry in which one plane crashed and its "sisterships" were thereafter grounded and recalled by

the manufacturer in order to correct the common defect which had caused the crash.

use because of any known or suspected defect of deficiency therein . . ."[3]

Thus, if an insured learns that certain of its products have a common defect, for its own benefit, it should at least recall those products to prevent any additional accidents from occurring or other damage from arising.

■■ Exclusion (n) has no application to Arcos' claim. That provision applies only if the product or property of which it is a part is "withdrawn from the market or from use" by the insured, and even in such situations, the policy still covers damages caused by the product that failed.[4] Arcos did not recall or withdraw any product claimed to be defective by a buyer, and its claim for damages does not include any expenses for such action. Moreover, the weld wire had been used before the mistake was discovered and the property damage to General Dynamics may be said to have occurred before that event.[5]

### III

Arcos agreed to pay General Dynamics in settlement of its claims in the two state court suits a sum not to exceed Fifty-Four Thousand Dollars ($54,000.00) according to the following terms: (a) The amount of Thirty-Six Thousand Dollars ($36,000.00) to be paid outright; and (b) An additional sum equal to one-half (½) of the amount recovered in any action against the Company for reimbursement of the amount represented by the settlement after deducting costs, expenses and a reasonable attorney's fee. The Company's objection to summary judgment as to any amount is that the sum is uncertain because of (1) the uncertainty as to the outcome of this

action, and (2) the provision after deducting costs, expenses and a reasonable attorney's fee, which amount is presently unknown. The first ground is not a sufficient reason to prevent summary judgment. Regarding the second ground, we must first look into Arcos' right to recover any part of the settlement figure.

■■ The Company admits that under the policy provisions it was obligated to defend any suit against Arcos seeking damages on account of an accident covered by the terms of the policy. The claims made by General Dynamics in the suits brought against Arcos in the state court were potentially within the scope of the policy. Therefore, the Company had a duty to defend Arcos in those suits, and its withdrawal from doing so was a decision that it made at its own peril. Cadwallader v. New Amsterdam Casualty Co., 396 Pa. 582, 152 A.2d 484 (1959); Pittsburgh Plate Glass Co. v. Fidelity and Casualty Co. of New York, *supra*, 281 F.2d at 540–542. Since Arcos was legally obligated to defend, settle the suits, or suffer default judgments against itself, and Arcos chose to settle, the Company is liable to pay the settlement amounts if they are reasonable ones. The parties have stipulated that General Dynamics suffered actual damages in excess of One Hundred Thousand Dollars ($100,000.00) on account of the weld wire supplied to it on March 2, 1969, by Arcos and that the settlement of the suits for the amount not to exceed Fifty-Four Thousand Dollars ($54,000.00) was reasonable. Hence, Arcos is entitled to summary judgment for the Thirty-Six Thousand Dollar ($36,000.00) item.

3. Condition 4(a) of the revised standard Comprehensive General Liability Policy, which, in relevant part, provides:
   "In the event of an [accident] . . . the named insured shall promptly take at his expense all reasonable steps to prevent other . . . property damage from arising out of the same or similar conditions, but such expense shall not be recoverable under the policy."

4. 2 Long, The Law of Liability Insurance, Appendix B, § 15, p. 47.

5. See Bowman Steel Corp. v. Lumbermens Mutual Casualty Co., 364 F.2d 246, 250 (C.A.3, 1966).

Arcos also claims an amount to compensate it for an attorney's fee of Two Thousand .Five Hundred Dollars ($2,500.00) for defending the state suits. The Company agrees that Two Thousand Five Hundred Dollars ($2,500.00) is a reasonable amount.[6] Arcos is entitled to summary judgment for that amount.

Arcos also claims that it is entitled to recover an additional Eighteen Thousand Dollars ($18,000.00) against the Company. The latter is liable to pay Arcos only the amount which Arcos is obligated to pay General Dynamics under the settlement agreement. Arcos may recover the entire Eighteen Thousand Dollars ($18,000.00) if the Company is liable to pay Arcos' costs, expenses and a reasonable attorney's fee for maintaining the action now before the court. The terms of the policy do not provide for the payment of these items. Clearly, the Company is not required to pay it under Pennsylvania law. Corace v. Balint, 418 Pa. 262, 210 A.2d 882, 886–888 (1965); 11 P.L.E. Damages § 33. Consequently, those items must be deducted from the Eighteen Thousand Dollar ($18,000.00) figure. Since the value of those items has not been established by proof, the remainder of the Eighteen Thousand Dollars ($18,000.00), after that value has been subtracted, is uncertain in amount.

Accordingly, Arcos is entitled to summary judgment for Thirty-Eight Thousand Five Hundred Dollars ($38,500.00); it is not entitled to judgment for Eighteen Thousand Dollars ($18,000.00). The Company is entitled to summary judgment on the issue of liability as to costs, expenses and a reasonable attorney's fee in this action; in other respects, its motion for summary judgment will be denied.

6. Arcos asserts that it is entitled to costs and expenses amounting to Six Thousand Two Hundred Seventy-Five Dollars ($6,275.00) in defending the state court suits, but candidly admits that it is not entitled to summary judgment for that sum until after it has presented evidence on those items. See Fox Chase Bank v. Wayne Junction Trust Co., 258 Pa. 272, 101 A. 979, holding that the insurer is liable for expenses incurred by insured for defending the case.