ELCO INDUSTRIES, INC., Plaintiff-Appellant, *v.* LIBERTY MUTUAL INSURANCE CO., Defendant-Appellee.

First District (3rd Division)    No. 79-534

Opinion filed November 19, 1980.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Robert L. Berner, Jr., Thomas R. Nelson, and Donald J. Brown, Jr., of counsel), for appellant.

Schaffenegger, Watson & Peterson, Ltd., of Chicago (Jack L. Watson, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Elco Industries, Inc., brought this declaratory judgment action seeking a determination of coverage under a comprehensive general liability insurance policy issued by defendant, Liberty Mutual Insurance Company. Elco seeks a declaration that the policy requires Liberty Mutual to indemnify and defend Elco in a suit initiated by Kohler Company. Kohler sued Elco for damages sustained as a result of Elco's alleged failure properly to heat treat and case harden governor regulating pins which were installed in Kohler's engines. Initially, Elco and Liberty Mutual filed a stipulation of facts and each moved for summary judgment. The trial court granted summary judgment in favor of Elco. On appeal this court reversed and remanded the cause for a factual determination of the effect of the installation and removal of the governor regulating pins upon the Kohler engines. (*Elco Industries, Inc. v. Liberty Mutual Insurance Co.* (1977), 46 Ill. App. 3d 936, 361 N.E.2d 589.) After taking another deposition, both parties again moved for summary judgment. The court granted Liberty Mutual's motion for summary judgment, and Elco appeals. The stipulated facts and pertinent provisions of the liability policy are set forth in the earlier opinion, and need not be repeated here.

In that earlier opinion, we found that, based upon the facts before the trial court, the allowance of summary judgment was premature. Specifically, we deemed it unclear "whether the installation of the governor regulating pins was such that the pins became so intertwined with the entire mechanism that the defect and their subsequent removal necessarily resulted in damage to the completed product."

On remand, the only new evidence adduced was the deposition testimony of Thomas E. Roerdink, Kohler's manager of quality control and inspection of engine and generator division at the time the defect was discovered. Roerdink discussed Kohler's methods of removal, replacement and repair of the defective pin contained in each engine. He explained that since the governor regulating pin is the first part inserted in an engine, replacement of the pin necessitated complete disassembly and reassembly of the engine. In the course of this process, five to eight paper gaskets per engine had to be scrapped, at a cost of $.01 or $.02 per gasket. This disassembly procedure was performed on approximately 7,500 engines. Thereafter, Kohler developed a more efficient method of repair. An eccentric bushing device enabled Kohler, after removal of the welsh plug, to lock the pin in place, drill a small hole in the end of the pin, and insert a cap that hardened the pin while it remained in the engine. The new system resulted in the scrapping of one welsh plug per engine, at a cost of $.02 to $.05 per plug. Kohler used this method to repair the 2,000 to 2,500 engines recalled. Roerdink stated that the unhardened pin installed

into the engine did not cause physical damage to any other part of the engine. The reason for the recall program "was strictly from the personal liability standpoint."

Both parties relied on Roerdink's deposition testimony in seeking summary judgment. Prior to any ruling by the trial court, Elco and Kohler settled their lawsuit. In granting summary judgment in favor of Liberty Mutual, the trial court reasoned that the damage caused by the defective pins was not substantial or the kind of damage which would merit coverage.

On appeal, Elco contends that the insurance policy extends coverage for the damages paid to Kohler by Elco. It urges that the removal of the defective pins caused damage to Kohler's engines and that the court erred in interpreting the policy to exclude coverage for property damage below some unspecified level. Mutual counters that the policy does not provide coverage because the Kohler suit did not seek recovery for bodily injury or property damage caused by an occurrence as defined in the policy; the damages sought were excluded by exclusion (n) of the policy; and the defective pins were not so intertwined with the engines that they necessarily resulted in damage to the engine.

Initially we must determine whether the installation of defective governor regulating pins, necessitating their removal and replacement, was an "occurrence" under the terms of this policy. The policy defines an "occurrence" as "an accident, event or happening, including injurious exposure to conditions which result during the policy period in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

Liberty Mutual, citing *Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Co.* (7th Cir. 1975), 508 F.2d 417, urges that the present situation does not involve an accident or occurrence. The *Hamilton* court, in construing the terms "accident" and "occurrence," stated at page 420 that "[t]he policy does not, however, cover 'an occurrence of alleged negligent manufacture'; it covers negligent manufacture that results in 'an occurrence.' " Other courts have reasoned that in the context of liability insurance policies, the word "accident" should not be construed to exclude claims involving negligence or breach of warranty; otherwise the insured is afforded little or no protection. (See, *e.g., Bundy Tubing Co. v. Royal Indemnity Co.* (6th Cir. 1962), 298 F.2d 151; *Yakima Cement Products Co. v. Great American Insurance Co.* (1979), 22 Wash. App. 536, 590 P.2d 371.) Moreover, in the earlier opinion we noted that courts have allowed recovery where the installation of a defective component results in damage to the finished product. See, *e.g., Arcos Corp. v. American Mutual Liability Insurance Co.* (E.D.Pa. 1972), 350 F. Supp. 380, *aff'd* (3d Cir. 1973), 485 F.2d 678; *Thomas J. Lipton, Inc. v. Liberty*

*Mutual Insurance Co.* (1974), 34 N.Y.2d 356, 314 N.E.2d 37, 357 N.Y.S.2d 705; *Gulf Insurance Co. v. Parker Products, Inc.* (Tex. 1973), 498 S.W.2d 676.

■■ Kohler claimed that Elco was negligent and committed a breach of warranty in failing properly to case harden the governor regulating pins. Elco was unaware of the defective nature of the pins until after installation and testing performed by Kohler. The subsequent repair and replacement of the defective pins, resulting in ruined gaskets and plugs contained in Kohler engines, was neither expected nor intended from Elco's standpoint. We conclude that there was an "occurrence" within the terms of the insurance policy. See *Yakima Cement Products Co. v. Great American Insurance Co.*

We next consider the applicability of exclusion (n), commonly known as the "sistership exclusion." Liberty Mutual maintains that the damage sought by Kohler against Elco arose out of the withdrawal and replacement of the pins and thus falls within the scope of the exclusion.

As we noted in our earlier opinion where there is ambiguity in the insurance policy, all exclusions, conditions, or provisions which tend to limit or defeat liability should be construed most favorably to the insured. (*Pierce v. Standard Accident Insurance Co.* (1966), 70 Ill. App. 2d 224, 216 N.E.2d 818.) Exclusion (n) has been construed by numerous jurisdictions. It is a common provision in comprehensive liability insurance policies, which is intended to exclude from coverage the cost of preventive or curative action by withdrawal of the product in situations where a danger is to be apprehended. (*Wyoming Sawmills, Inc. v. Transportation Insurance Co.* (1978), 282 Or. 401, 578 P.2d 1253.) A majority position among courts construing the provision holds that exclusion (n) is operable only where the withdrawal of the product was by the insured rather than a third party. And even in such situations, the policy still covers damages to the finished product resulting from the incorporation of the defective component. (See, *e.g., Bigelow-Liptak Corp. v. Continental Insurance Co.* (E.D. Mich. 1976), 417 F. Supp. 1276; *Arcos Corp. v. American Mutual Liability Insurance Co.*; *International Hormones, Inc. v. Safeco Insurance Co. of America* (1977), 57 App. Div. 2d 857, 394 N.Y.S.2d 260; *Thomas J. Lipton, Inc. v. Liberty Mutual Insurance Co.*; contra, *Hamilton Die Cast, Inc. v. United States Fidelity and Guaranty Co.* (where fact that withdrawal was effected by third person rather than insured was deemed immaterial).) Here, Elco did not recall or withdraw any product claimed to be defective; Kohler recalled the engines containing the defective pins. In addition, as the pins were inserted prior to discovery of the defect, the property damage to Kohler thus may be said to have occurred prior to the discovery and subsequent recall. See *Arcos Corp. v. American Mutual Liability Insurance Co.*

■■ Furthermore, we indicated in our prior opinion that several facts were crucial to a determination of the applicability of exclusion (n). Among such facts were whether removal of the pins required expenditures greater than necessary to replace the pins themselves and whether the pins resulted in damage to other parts of the engine. On remand, the evidence demonstrated that in the course of removing and repairing the pins, parts of Kohler's engines other than the pins, *i.e.*, paper gaskets and welsh plugs, were destroyed and had to be replaced. In view of all these facts, we conclude that exclusion (n) does not preclude coverage in the present case.

■■ We next consider the question of whether the installation and removal of the defective pins caused "property damage" within the terms of the policy. The policy defines "property damage" as injury or destruction of tangible property. A majority position holds that "property damage" includes tangible property which has been diminished in value or made useless irrespective of any actual physical injury to the tangible property. (*Pittway Corp. v. American Motorists Insurance Co.* (1977), 56 Ill. App. 3d 338, 370 N.E.2d 1271; see *Hauenstein v. St. Paul-Mercury Indemnity Co.* (1954), 242 Minn. 354, 65 N.W.2d 122.) The mere installation or removal of defective parts which causes no destruction or injury to the third person's products, however, does not constitute property damage. See *Chambers Gasket & Manufacturing Co. v. General Insurance Co. of America* (1975), 29 Ill. App. 3d 998, 331 N.E.2d 203.

■■ Liberty Mutual argues that Kohler's complaint did not allege that there was any injury to or destruction of tangible property, or that its own products were damaged by Elco's pins. The amended complaint charged that the defect required Elco to test, identify, reinspect, rip out, replace, and repair the pins installed in its engines. Such allegations were sufficient to allege damage to Kohler's tangible property. See *Arcos Corp. v. American Mutual Liability Insurance Co.*

A review of the record discloses that the removal of the pins from the engines caused the destruction and replacement of several paper gaskets per engine. Repair of the pins without their actual removal occasioned the loss and replacement of one welsh plug per engine. While the installation of the defective pins did not, in itself, cause actual physical damage to the Kohler engine, correction necessarily resulted in damage to several components of the finished product. We believe these facts make the present case analogous to the situation considered in *Arcos Corp. v. American Mutual Liability Insurance Co.* In *Arcos*, the insured manufacturer supplied defective weld wire to be used in a nuclear power plant of a submarine. The purchaser, believing that a failure of the power plant might place the entire submarine in jeopardy, proceeded to rip out and reweld all joints made with the defective wire. The buyer then sued the

insured manufacturer for the cost and expenses incurred, in part, in the ripping out and rewelding; no damages were sought for lack of use of the submarine or its parts. The court deemed the damage sustained by the buyer from the use of the faulty wire to constitute "property damage" within the meaning of the policy. See also *Wyoming Sawmills v. Transportation Insurance Co.*

In granting summary judgment in favor of Liberty Mutual, the trial court indicated that the existence of insignificant or minimal property damage would not merit coverage. Contrasting the present situation to the case of *Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Co.*, the court reasoned that the removal of paper gaskets in order to remedy the defective pins was not the kind of damage which would trigger coverage. We believe that *Hamilton* is factually distinguishable from the present case. In *Hamilton*, the insured manufacturer sought to recover from its insurance carrier for damages occasioned by the defective tennis racket frames it had supplied. The purchaser had withdrawn the completed tennis rackets from the market and sued the insured for lost profits, customer refunds, and injury to its reputation. Finding that the purchaser was claiming damages for injury to intangible property, the court concluded that coverage did not exist under the policy. The court further reasoned that the mere inclusion of a defective component, the frame, where no physical harm to other parts results, did not constitute "property damage." Here, in contrast, Kohler did not seek damages for injury to intangible property; it sought to recover for injury to its engines, sustained by reason of the inclusion of the defective Elco pins. Moreover, the incorporation and subsequent removal of the insured's pins caused, at a minimum, actual physical damage to gaskets and plugs contained in the third party's engines. The fact that it was unnecessary to scrap the entire engine or that it was possible to use the same engine upon the insertion of new pins does not alter the fact that the replacement process damaged certain portions of the finished product. Finally, neither *Hamilton* nor any other authority suggests that the scope of coverage under this policy is restricted to some minimum degree or specific type of property damage sustained by a third party.

■■ We conclude that the sums which Elco paid in settlement of Kohler's action were the result of "property damage" caused by an occurrence as defined by the policy. Accordingly, we find the trial court erred in granting summary judgment in favor of Liberty Mutual and in denying Elco's motion for summary judgment.

■■ Remaining for consideration is the proper measure of recovery to which Elco is entitled. We believe the policy provides coverage for the costs of the paper gaskets and welsh plugs which were destroyed and replaced in the process of removal and repair. It would also encompass

such labor expenses as might be attributable to the disassembly, reassembly, removal or replacement of parts of Kohler's engines other than the Elco pins, which was necessitated by correction of the pins. (See *Goodyear Rubber & Supply Co. v. Great American Insurance Co.* (9th Cir. 1973), 471 F.2d 1343; *Bundy Tubing Co. v. Royal Indemnity Co.*; *Wyoming Sawmills v. Transportation Insurance Co.*) No recovery may be had for the value of the defective pins, or the cost of the new case hardened pins or caps placed upon the unhardened pins. (See *Bundy Tubing Co. v. Royal Indemnity Co.*; *Chambers Gasket & Manufacturing Co. v. General Insurance Co. of America.*) The exact expenditures incurred by Kohler are not before us. We therefore remand the cause for a factual determination of the costs of materials and labor involving the removal and replacement process, excluding the costs of replacing the defective governor regulating pins themselves.

For the foregoing reasons, the order of the circuit court of Cook County awarding summary judgment in favor of Liberty Mutual is reversed and the cause is remanded with directions to enter summary judgment in favor of Elco and to conduct further hearings to ascertain damages consistent with the holdings of this opinion.

Reversed and remanded.

McGILLICUDDY, P. J., and RIZZI, J., concur.