MARATHON PLASTICS, INC., Plaintiff-Appellee and Cross-Appellant, v. INTERNATIONAL INSURANCE COMPANY, Defendant-Appellant and Cross-Appellee.

Fourth District   No. 4—86—0778

Opinion filed September 24, 1987.

Heyl, Royster, Voelker & Allen, of Springfield (Frederick P. Velde and Michael C. Upperman, of counsel), for appellant.

Londrigan, Potter & Randle, P.C., of Springfield (Craig A. Randle and Thomas P. Londrigan, of counsel), for appellee.

JUSTICE LUND delivered the opinion of the court:

On June 23, 1986, a bench trial was conducted in the circuit court of Sangamon County on a complaint filed by Marathon Plastics Company (Marathon) seeking, pursuant to a liability insurance policy, to recover from International Insurance Company (International) monies paid to third-party claimants. On September 30, 1986, the court entered a judgment in favor of Marathon determining coverage under the policy existed and in the amount of $22,183.71. International appeals asserting that various policy defenses require a reversal. We affirm.

Marathon is a manufacturer of polyvinylchloride (PVC) pipe which is sold to rural water districts through Contractor Utility Sales Company (Contractor). Ronald Lance is the sole owner of Marathon, and, during all relevant times, was the president and majority stockholder in Contractor. In 1983, Marathon sold pipe to Albrecht Well Drilling (Albrecht) to be used to construct the Hickory-Kerton Water District. These water systems are underground systems. In July 1983, the water system was tested by Albrecht, and it was determined the system leaked. To correct the leaks, Albrecht needed people to walk the lines looking for signs of leaks. Once these were located, Albrecht was required to dig up the pipe joint, cut on both sides of it, insert a new piece of PVC pipe, and rebury the line. It was determined the leaks were caused by defective seals which Marathon incorporated into the pipe.

On September 22, 1983, Albrecht made a written demand on Contractor for the damages, which were comprised of labor and material used to repair the leaks. On October 22, 1983, a final demand letter from Albrecht was received asking for $37,391.

On December 31, 1983, a check was drawn on the account of Contractor by Lance in the amount of $22,183.71 to settle the claim with Albrecht. The release included Marathon and Contractor.

On January 30, 1984, International issued to Marathon a reservation of rights letter which set forth six policy exclusions and/or defenses which could be asserted in the denial of coverage for the claims asserted by Marathon.

On May 4, 1984, International filed an action in the Sangamon County circuit court seeking a declaration that the insurance policy underlying this action did not cover the third-party claims, including that of Albrecht. The complaint alleged a single-policy exclusion as the basis of this declaration. On July 26, 1984, the court dismissed the complaint finding that a declaratory judgment would not terminate the controversy between the parties. International filed a motion to

reconsider the court's ruling which was denied on September 10, 1984. International did not appeal. Marathon filed the current action upon the expiration of the time for appeal.

Marathon filed a 13-count complaint for monies paid to third parties for which Marathon was entitled indemnification by International. The parties, by stipulation, only submitted one count, that involving Albrecht, to trial to determine the issue of coverage common to all counts.

The trial commenced on June 23, 1986. The evidence shows that on November 1, 1983, a meeting was held between Lance, Bill Ridley, Marathon's insurance agent, and Betty Dunham, a claims representative from International. Ridley and Lance testified Dunham indicated coverage existed, and Lance should negotiate a better settlement if possible. About two weeks later, Lance notified Dunham of the final amount of $22,183.71 and testified Dunham told him the check would be coming in two weeks. Ridley contacted Dunham several times concerning the check and testified Dunham told him one time that the check was in the mail. In December 1983, Lance and Ridley had a meeting with Dunham in Decatur concerning the settlement draft. Lance testified Dunham told him that the various claims Marathon was making would be handled in the different parts of the country and that the Albrecht claim was now being handled in Peoria, rather than Decatur. Dunham denies telling Lance or Ridley that coverage existed or that a check was being issued.

On December 31, 1983, Marathon and Contractor settled with Albrecht for the amount of $22,183.71 and received a release. This amount was for the cost of equipment and labor to dig up the defective pipe and to repair the leaks. This did not cover any cost for replacement pipe.

Frank Rutter, an underwriter for US Insurance Group, testified the underwriter's duty is to select risks submitted by independent agents and to rate and price the risk for the company. The original policy was issued for the period of November 1, 1982, to November 1, 1983. The policy was renewed in 1983. This renewed policy was cancelled due to excessive losses under products. Rutter testified the policy is a form that is standard to the insurance industry and is meant to create uniformity throughout the industry.

Charles Ruppel is a member of the board of directors of several insurance companies. He gained his experience in the insurance, manufacturing, and sale of PVC pipe as chief financial officer of Robintech, Inc., a PVC manufacturing company. In 1974, 1975, and 1976, he negotiated insurance policies and settlements for Robintech. He

testified the insurance policy in this case was substantially similar to the policies he used to negotiate. The insurance companies issuing these policies paid for finding leaks, digging up the pipe, and the actual labor costs to replace the pipe. Lance also testified that when he was distributing PVC pipe for Robintech another insurance company paid claims similar to the current one.

Marathon argued it should prevail because International was barred from asserting its defenses by the doctrines of *res judicata* and waiver based on the previous court action, and even if these did not apply, it was entitled to recovery under the insurance policy. The court held the question of coverage was not barred by the doctrine of *res judicata* but that International waived the policy defenses which were not asserted in the prior declaratory judgment action. The court further held on the merits that the policy in question covered and afforded indemnity to Marathon for the third-party claims of Albrecht and similar claims. This appeal followed.

International asserts, first, that Marathon's claim should be defeated because Marathon violated the so-called "no action" clause and the "assistance and cooperation" clause of the policy. The no-action clause provides that "no action shall lie against the company *** until the amount of the insured's obligation to pay shall have become finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company." The assistance and cooperation clause provides in part:

> "The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense *** ."

International argues that Marathon's settlement with Albrecht violates both these clauses because the amount was not determined by trial or written agreement of International, and the amount was voluntarily paid without International's consent. The court found International authorized the settlement and was estopped from asserting these defenses.

■■ Our supreme court defined the principle of estoppel when it stated:

> "The general rule is where a party by his statements or conduct leads another to do something he would not have done but for the statements or conduct of the other, the one guilty of the expressions or conduct will not be allowed to deny his utterances or acts to the loss or damage of the other party. The party claiming the estoppel must have relied upon the acts or representations of the other and have had no knowledge or con-

venient means of knowing the true facts. Fraud is a necessary element but it is not essential that there be a fraudulent intent. It is sufficient if a fraudulent effect would follow upon allowing a party to set up a claim inconsistent with his former declarations." (*Dill v. Widman* (1952), 413 Ill. 448, 455-56, 109 N.E.2d 765, 769.)

Estoppel refers to abatement of rights and privileges of the insurer where it would be inequitable to permit their assertion. Such relinquishment need not be voluntary, intended, or desired by the insurer, but it necessarily requires prejudicial reliance on the part of the insured. *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500, 475 N.E.2d 872, 879; *National Discount Shoes, Inc. v. Royal Globe Insurance Co.* (1981), 99 Ill. App. 3d 54, 59, 424 N.E.2d 1166, 1170.

■ In this case, the prejudicial reliance by Marathon is clear. Marathon settled based on the authority given by Dunham, International's agent. To now allow International to defeat the claim based on the settlement it authorized would clearly be inequitable.

■ International believes the court's finding that International authorized the settlement is erroneous. The findings of the court will not be overturned unless they are against the manifest weight of the evidence. (*John J. Calnan Co. v. Talsma Builders, Inc.* (1977), 67 Ill. 2d 213, 218, 367 N.E.2d 695, 698.) The testimony of Lance and Ridley concerning their discussions with Dunham about coverage and settlement, along with the fact that Lance negotiated the settlement shortly after the first meeting, is sufficient to sustain the court's finding.

International asserts next that the claim should be defeated by the notice provision of the policy which requires the insured to give written notice, containing particulars of the occurrence, to the company or any authorized agent as soon as practical. The evidence shows Marathon first became aware of the problem in July 1983. In late October 1983, Marathon notified International of the loss, and a written claim was filed in November 1983. The court found Marathon gave International timely notice.

■ International argues that this finding is incorrect because International was prejudiced by the delay from July to November, alleging that by the time it could investigate the occurrence, Marathon had settled the claim. However, since International has asserted various substantive policy defenses to the claim, it is unclear how it is prejudiced by Marathon's settlement. The policy contains no definition of "as soon as practical." Factual determinations regarding the meaning

of contract language should not be overturned unless it is contrary to the manifest weight of the evidence. (*Howard A. Koop & Associates v. KPK Corp.* (1983), 119 Ill. App. 3d 391, 398, 457 N.E.2d 66, 72.) In the current case, especially in view of the fact that International was not prejudiced by the delay, we cannot say the court's finding was against the manifest weight of the evidence.

■ International next contends that the policy requirement that suit against the company be brought within one year after the loss occurs bars Marathon's recovery. The leakage was discovered in July 1983. On December 31, 1983, Marathon settled the case, and on October 11, 1984, this suit was filed.

In *Pierce v. Standard Accident Insurance Co.* (1966), 70 Ill. App. 2d 224, 216 N.E.2d 818, the court noted that it was difficult to decide the date of loss for purposes of indemnity insurance contracts. Therefore, the court decided the date of loss should be the date a judgment was entered against the insured or the date insured specifically assumed liability. We agree. Since Marathon specifically assumed liability on December 31, 1983, when it settled with Albrecht, it is obvious the trial was commenced within the required time frame.

■ We further note that International filed a declaratory judgment action against Marathon on May 4, 1984. The final day for appeal from the dismissal of that case was October 10, 1984. Marathon filed this suit the next day. Since Marathon was foreclosed from filing this lawsuit until the resolution of International's, we believe it would be inequitable to count this period of over five months against Marathon's time limit. Thus, even if the date of loss was July 1983, the lawsuit was filed within the one-year period.

■ International next argues that coverage is excluded by exclusion (m), which provides that the insurance does not apply:

"(m) [T]o loss of use of tangible property which has not been physically injured or destroyed resulting from:
***

(2) the failure of the named insured's product or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured ***."

International believes this applies because the water system was not physically damaged by the pipe which did not work as represented by Marathon.

However, this exclusion applies to loss of use of the water system. Marathon is not seeking to recover for the loss of use of the water system but for property damage to the system. Accordingly, we find

the court's decision that this exclusion does not apply was correct.

International argues that exclusion (n), which provides the insurance does not apply "to property damage to the named insured's products arising out of such products," precludes Marathon's recovery. This contention is the heart of the case.

International asserts the purpose of this exclusion is to prevent the insurer from having to pay for repairs or replacement of products that are produced incorrectly or defectively. All the pipe used in the system was supplied by Marathon. Thus, International argues, the damages requested all involve replacement of defective product and are not property damage as defined.

Marathon asserts that its product caused property damage to a third party, Albrecht, and the amounts requested are the measure of damages. It asserts it is not seeking recovery for the cost of the pipe used to replace the defective pipe. Therefore, it states, the exclusion does not apply.

■ As noted, the policy in question is an indemnity insurance policy written to cover Marathon if its product caused property damage to another. Therefore, we must determine first if property damage to a third party occurred. Then, if it did, the type of damages covered. The policy provides " 'property damage' means (1) physical injury to or destruction of tangible property which occurs during the policy period."

In *Pittway Corp. v. American Motorists Insurance Co.* (1977), 56 Ill. App. 3d 338, 370 N.E.2d 1271, the insured manufactured valves which were used in hair spray cans. After assembly, it was discovered the valves were defective and leaked. Since it was economically impossible to replace the valves and use the cans, they were scrapped. The insurer raised the defense that this was not property damage. The contract definition of property damage was virtually identical to the present one. The court found the facts constituted property damage within the contractual definition. It said:

> "It is clear that Pittway could not recover for the value of the defective valve which its subsidiary Seaquist furnished. [Citation.] This loss is under one of the policy exclusions as injury to products manufactured by the named assured, and in fact Pittway does not seek recovery for this loss. However, there is Illinois authority that where a component is so intertwined with the entire mechanism that the defect necessarily results in damage to the completed product the component will be deemed to have caused property damage. [Citation.] Neither by the cases cited by the parties nor by our own research have we

found an Illinois case which squarely holds that there must be physical harm to the completed product before an insured may recover for property damage under the general liability policy. However, we have found what we conclude to be a majority position which holds that the term 'property damage' includes tangible property which has been diminished in value or made useless irrespective of any actual physical injury to the tangible property. [Citations.]

In the case before us damage to tangible property, that is the completed product, is alleged and not mere economic damage in the nature of loss of investment, anticipated profits and financial interests. [Citation.] We conclude that the damage to the completed product exclusive of the value of the defective product furnished by Pittway amounts to damage to tangible personal property within the terms of the policy." 56 Ill. App. 3d 338, 341-42, 370 N.E.2d 1271, 1274.

On a similar vein is *Elco Industries, Inc. v. Liberty Mutual Insurance Co.* (1980), 90 Ill. App. 3d 1106, 414 N.E.2d 41. In that case, the insured provided defective governor regulating pins to an engine manufacturer. The defective pins did not damage the engine. However, to repair or replace them involved damaging five to eight paper gaskets or scrapping one Welsh plug. The court noted the majority position holds that "property damage" includes tangible property which has been diminished in value or made useless irrespective of any actual physical injury to the tangible property.

*Arcos Corp. v. American Mutual Liability Insurance Co.* (E.D. Pa. 1972), 350 F. Supp. 380, *aff'd mem.* (3d Cir. 1973), 485 F.2d 678, is analogous. There the insured sold weld wire to be used on the seams of nuclear reactors in submarines. Once it was discovered defective, the third party had it all removed and replaced. The court found this was "property damage" within the meaning of the policy.

International also asserts that mere installation or removal of defective parts which causes no destruction or injury to the third person's products does not constitute property damage. (*Chambers Gasket & Manufacturing Co. v. General Insurance Co. of America* (1975), 29 Ill. App. 3d 998, 1001, 331 N.E.2d 203, 206; *Elco Industries, Inc. v. Liberty Mutual Insurance Co.* (1980), 90 Ill. App. 3d 1106, 1111, 414 N.E.2d 41, 45.) It characterizes the current case as involving simply removal and replacement of defective parts, the pipe. The only product damaged, it is urged, is Marathon's defective product, the pipe. Therefore, International believes no product damage occurred. International is mistaken.

In the present case, Marathon sold the pipe and gaskets. These were incorporated by Albrecht into the Hickory-Kerton water system. Once Albrecht finished construction, the water system became one finished product. The leaking gaskets caused the system to become useless and diminished its value. Therefore, even though no physical injury occurred to the water system, we find that due to the diminution in value to the system caused by the leaks, property damage has occurred. Now, we must determine which expenses are covered by the policy.

International believes there are no recoverable damages. It relies on *Elco Industries, Inc. v. Liberty Mutual Insurance Co.* (1980), 90 Ill. App. 3d 1106, 414 N.E.2d 41. There, after finding property damage, the court stated that the policy "would also encompass such labor expenses as might be attributable to the disassembly, reassembly, removal or replacement of parts of Kohler's engines other than the Elco pins, which was necessitated by correction of the pins. [Citations.] No recovery may be had for the value of the defective pins, or the cost of the new case hardened pins or caps placed upon the unhardened pins." (90 Ill. App. 3d 1106, 1112-13, 414 N.E.2d 41, 46-47.) International asserts that since Marathon supplied all the pipe, Albrecht's expense is simply that of replacing a defective part and should not be considered covered expenses. It also cites *Carboline Co. v. Home Indemnity Co.* (7th Cir. 1975), 522 F.2d 363, where the court found a plaintiff could not recover for the cost of removing and replacing defective coating it supplied which was applied to metal cooling tanks.

We must disagree with International for several reasons. First, our reading of *Elco* and the cases cited therein convinces us that *Elco* allows for recovery in this case. In the present case, once Albrecht was finished with construction, a new product existed, the Hickory-Kerton water system. Admittedly, all the pipe was supplied by Marathon, but once it was joined together and buried in the earth, it became a new product. In order to repair the damaged product, it was necessary to find the leaks, dig down to the leaks, cut out the defective portions of pipe, replace this with good pipe, and recover the pipe. The parallel with *Elco* is remarkable. The damages sought in the current case are those necessary for the "disassembly and reassembly" of the water system. No recovery is sought, nor may it be had, for the value of the defective pipe or the replacement pipe.

Our review satisfies us that this conforms with the majority position on the question. In *Goodyear Rubber & Supply Co. v. Great American Insurance Co.* (9th Cir. 1973), 471 F.2d 1343, defective door

gaskets to be used on ships were involved. The court found no recovery for replacement gaskets but that the policy covered the cost of removing and replacing the gaskets. In *Bundy Tubing Co. v. Royal Indemnity Co.* (6th Cir. 1962), 298 F.2d 151, the court found the cost of removing defective heating tubing which had been placed in concrete and installing new tubing was recoverable, but the value of the defective or replacement tubing was not. In *Geddes & Smith, Inc. v. Saint Paul-Mercury Indemnity Co.* (1959), 51 Cal. 2d 558, 334 P.2d 881, the court found the insurance policy covered not the cost of the defective doors but the expenses of removing the defective door and installing a new one. See also *Hauenstein v. St. Paul-Mercury Indemnity Co.* (1954), 242 Minn. 354, 65 N.W.2d 122; *Arcos Corp. v. American Mutual Liability Insurance Co.* (E.D. Pa. 1972), 350 F. Supp. 380, *aff'd mem.* (3d Cir. 1973), 485 F.2d 678; *Pittsburgh Plate Glass Co. v. Fidelity & Casualty Co.* (3d Cir. 1960), 281 F.2d 538.

██ ██ Second, even if we did not determine the policy is clear and this exclusion does not apply, it is, at least, ambiguous on that point. An insurance policy is deemed ambiguous if it is subject to more than one reasonable interpretation. (*Schweighart v. Country Mutual Insurance Co.* (1984), 122 Ill. App. 3d 40, 42, 460 N.E.2d 89, 90.) Where there is an ambiguity in the insurance policy, all exclusions, conditions, or provisions which tend to limit or defeat liability should be construed most favorably to the insured. (*Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 423, 401 N.E.2d 539, 541; *Elco Industries, Inc. v. Liberty Mutual Insurance Co.* (1980), 90 Ill. App. 3d 1106, 1110, 414 N.E.2d 41, 45.) This construction would afford Marathon the coverage it requests.

██ The third reason International's argument fails is that the evidence outside the contract shows the parties agreed to this coverage. While usually the terms of a written agreement will be the only items considered in interpreting the agreement, in an ambiguous contract, custom and usage evidence is admissible. (*Ruthman v. Guarantee Insurance Agency Co.* (1980), 89 Ill. App. 3d 997, 999, 412 N.E.2d 697, 698.) The court may also look at the interpretation which the parties have placed on the agreement as shown by their contemporaneous or subsequent acts or conduct. (*In re Marriage of Whetstone* (1980), 87 Ill. App. 3d 164, 167, 409 N.E.2d 41, 43.) The custom and usage evidence shows that in the PVC pipe industry it is the practice for insurance companies with similar policies to cover this type of loss. Also, evidence from International's underwriting file shows that International anticipated a possible loss for excavation and replacement of defective pipe.

We, thus, find the trial court's determination that this exclusion does not bar recovery is correct.

International's next asserted defense is exclusion (o), which provides the insurance does not apply "to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith." However, the property damage alleged is not to any work performed by Marathon. Marathon was simply the pipe supplier.

International's final policy defense is exclusion (p), which provides the insurance does not apply "to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products *** if such products *** are withdrawn from the market or from use because of any known or suspected defect or deficiency therein." This is known as the "sistership" exclusion. Its name is derived from an incident in the aircraft industry in which one plane crashed, and its "sisterships" were thereafter grounded and recalled by the manufacturer in order to correct the common defect. *Arcos Corp. v. American Mutual Liability Insurance Co.* (E.D. Pa. 1972), 350 F. Supp. 380.

This exclusion is common in comprehensive liability insurance policies and is intended to exclude from coverage the cost of preventative or curative action by withdrawal of the product in situations where a danger is to be apprehended. (*Elco Industries, Inc. v. Liberty Mutual Insurance Co.* (1980), 90 Ill. App. 3d 1106, 1110, 414 N.E.2d 41, 45; *Wyoming Sawmills, Inc. v. Transportation Insurance Co.* (1978), 282 Or. 401, 578 P.2d 1253.) This provision applies only if the product or property of which it is part is withdrawn from the market or from use by the insured. (*Arcos Corp. v. American Mutual Liability Insurance Co.* (E.D. Pa. 1972), 350 F. Supp. 380.) In the present case, Marathon did not withdraw the product from the market. The damages involved are those arising out of the expense incurred replacing the defective pipes. Thus, the exclusion is inapplicable.

International asserts next that it was prejudiced by the admission of improper evidence. It specifically complains of evidence from its underwriting file and evidence of the custom and usage in the industry. There is no error in the court considering the evidence. First, the trial court found, and we agree, that the policy alone requires International to cover these damages. Thus, since the trial court did not rely on the evidence in reaching its verdict, even if its admission was error, there was no prejudice and no required reversal. (*Moore v. Farmers Insurance Exchange* (1982), 111 Ill. App. 3d 401,

414, 444 N.E.2d 220, 229.) Also, as we noted earlier, even if the policy does not clearly support coverage, it is ambiguous on the question. This evidence is then admissible to help the court interpret its provisions. See *Weger v. Robinson Nash Motor Co.* (1930), 340 Ill. 81, 91, 172 N.E. 7, 11; *Ruthman v. Guarantee Insurance Agency Co.* (1980), 89 Ill. App. 3d 997, 999, 412 N.E.2d 697, 698.

Since we have affirmed the ruling of the trial court on all the substantive policy defenses asserted by International, it is not necessary for us to address the further questions of *res judicata* and waiver.

For the above-stated reasons, the trial court is affirmed.

Affirmed.

SPITZ, P.J., and GREEN, J., concur.